IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROBERT A. RADNICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:06cv636 |
| ) | |
| FRANCIS HARVEY, ) | |
| SECRETARY OF THE ARMY, ) | |
| ) | |
| AND ) | |
| ) | |
| THE ARMY BOARD FOR CORRECTION OF ) | |
| MILITARY RECORDS, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION

Plaintiff Robert A. Radnick ("Radnick") retired from duty as a Michigan Army National Guard JAG Officer in 1998, after attaining the rank of Major.  He has sued Francis Harvey, Secretary of the Army, and the Army Board for Correction of Military Records ("ABCMR"), collectively "the Secretary," alleging that the Secretary's failure to correct his personnel record constituted an arbitrary and capricious decision under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-06 (2006).

Before the Court are the parties' cross-motions for summary judgment.  The Court has heard oral arguments of the motions and, for the reasons stated in this opinion, finds that the Secretary's decision not to amend two of Radnick's Officer Evaluation Reports ("OERs") that had "5" ratings without the accompanying comments mandated by Army Regulation 623-105 was

neither arbitrary nor capricious.  Therefore, the Court will deny the plaintiff's cross-motion for summary judgment and grant the defendant's motion for summary judgment.

## I. Background

### A. OERs and Army Regulation 623-105

The Army utilizes a complex system of personnel evaluations in making decisions about promotion and duty assignments.  The most basic and essential part of this system is the OER.[1]  Each OER is split into seven different parts.  Part IV of the OER, entitled "Performance Evaluation - Professionalism," is at issue in this case.  Part IV(a) asks the rating officer to grade the rated officer in fourteen individual categories of professional competence.  Each category contains a statement to which the rating officer is to respond with a number between "1" and "5," "1" being the highest degree of agreement with the statement as it pertains to the rated officer and "5" being the lowest degree.[2]  The third category, Part IV(a)(3), asks the rating

---

[1] Army Regulation ("AR") 623-105 § 1-4(a) defines the purpose of the Officer Evaluation System as a way to identify "officers who are best qualified for promotion and assignment to positions of higher responsibility [and officers] who should be kept on active duty, those who should be retained in grade, and those who should be eliminated."  The primary function, therefore, "is to provide information . . . for use in making personnel management decisions."  Id. at § 1-5(c)(1).

[2] Thus, if the rating officer strongly agrees that the rated officer "[m]aintains appropriate level of physical fitness" the rated officer will receive a "1" rating.  If the rating officer strongly disagrees with that statement, the rated officer will

officer whether the rated officer "[m]aintains appropriate level of physical fitness."  In the space after the phrase, the rated officer is to indicate whether he passed or failed the Army Physical Readiness Test[3] ("APRT"), or was prohibited from taking the test because of a medical profile, and the year and month of the most recent test or the date the medical profile was awarded.  AR 623-105 § 4-13(b)(2).[4]  If the rated officer did not take the APRT within the previous year due to the requirements of the cardiovascular screening program,[5] no entry is needed, but the rating officer is required to explain the absence of an entry in Part IV(b).

Part IV(b) provides space for the rating officer to add

---

receive a "5" rating.

[3] Also referred to as the Army Physical Fitness Test ("APFT").

[4] AR 623-105 § 4-13(b)(2) states in pertinent part:

> In the space after the phrase 'Maintains appropriate level of physical fitness,' the rated officer will enter (typed) one of the following APRT entries: 'PASS,' 'FAIL,' or 'PROFILE'; the year and month of the most recent APRT administered within 1 calendar year prior to the rated officer's signature date of the report; or, when 'PROFILE' is entered, the date the profile was awarded.  Sample entries are: 'PASS 8206,' 'FAIL 8206,' or 'PROFILE 8209.'

AR 623-105 § 4-13(b)(2)

[5] Soldiers who reached the age of 40 before January 1, 1989, must be cleared through the cardiovascular screening program before taking the APRT.

comments concerning any of the categories of Part (IV)(a). Comments are mandatory to explain or clarify any ratings of "4" or "5" or an APRT entry of "FAIL" or "PROFILE" in Part IV(a)(3). Id. at § 4-13(b)(7). These comments "should address reasons for failure and note any progress toward meeting physical fitness standards." Id. at § 4-13(b)(7)(b). Moreover, AR 623-105 § 4-27 requires that any OER with a rating of a "4" or "5" in any of the fourteen categories of Part IV(a) be referred to the rated officer for his or her review before the OER is sent to headquarters.

B. Radnick's OERs

The record contains twelve of Radnick's OERs, dating back to the period ending June 6, 1986. Administrative Record ("A.R.") 027-50. In seven of his first eight OERs Radnick received a rating of "1" in Part IV(a)(3). In his first three OERs, covering the period of June 7, 1985, through June 6, 1988, the "1" ratings were due to his successful completion of the APRT. A.R. 027-32. The next four OERs, covering the period of June 7, 1988, through June 6, 1992, contain "1" ratings but were accompanied by an explanation that the APRT was not taken because Radnick had not met the requirements of the cardiovascular screening program. A.R. 033-39. The OER covering the period from June 7, 1992, through June 6, 1993, indicates in Part IV(a)(3) that Radnick did not take the APRT because he was given

4

a medical profile. A.R. 041-42.

On July 9, 1994, pursuant to AR 623-105 § 4-27, Radnick received a copy of his OER for the period of June 7, 1993, through June 6, 1994 (the "1994 OER"), which contained a "5" rating and a "FAIL" notation in Part IV(a)(3). A.R. 043-44. The explanatory comments mandated by AR 623-105 § 4-13(b)(7) were not present. After reviewing the OER, Radnick protested the "5" rating by writing to the senior rating officer, Col. Larry Ware, that his "physical condition during the rating period of the attached OER was the same as it has been for 'a number of years.' A change of rating from '1' to '5' during the course of one year seems to be an overly harsh means of 'catching-up' by the rater." A.R. 052. Although a commander's inquiry hearing should have been held in response to Radnick's contesting the 1994 OER, none occurred. However, Radnick did not pursue his right to a commander's inquiry and did not take any other action at that time to contest or appeal the "5" rating.

Radnick did not complete the APRT during the next rating period because he was given a medical profile. A.R. 045-46. For the rating period of June 7, 1995, through November 14, 1995 (the "1995 OER"), Radnick again received a "5" rating and a "FAIL" notation for Part IV(a)(3). A.R. 047-48. Again, the explanatory comments mandated by § 4-13(b)(7) were omitted. Although Radnick received a copy of the 1995 OER in December 1995, he did not

dispute it or seek an appeal of the rating. A.R. 053. The final OER in the record, covering the period of November 15, 1995, through November 14, 1996, contains a "1" rating and a "PASS" notation for Part IV(a)(3). A.R. 049-50.

## II. PROCEDURAL HISTORY

In May 1997, Radnick requested consideration for promotion to Lieutenant Colonel. A.R. 054-58. In a 2-1 decision, not rendered until February 1999 and not communicated to Radnick until September 1999, Radnick was passed over for promotion. Id. Radnick maintains that the "5"s on the 1994 and 1995 OERs were the reasons for his being passed over. See Pl.'s Mem. in Support of Cross-Motion at 10 ("Since his 1999 promotion reconsideration was afforded on a record containing the very OERs at issue here, however, it says absolutely nothing about his entitlement to promotion reconsideration on a record without those OERs now." (emphasis omitted)). Subsequently, on August 5, 2000, Radnick filed an appeal with the Officer Special Review Board ("OSRB") requesting, for the first time, a review of the 1994 and 1995 OERs. A.R. 024-26.

Obviously recognizing that he was very late in disputing the "5" ratings in the 1994 and 1995 OERs, Radnick first addressed the issue of timeliness by arguing that the "statute of

limitations"[6] should not have begun to run until November 1995 because, although he requested a commander's inquiry of the 1994 OER, no action was taken by the senior rater. Radnick contended that "the earliest and proper and fair time to start the 5-year" period was not until he transferred from the senior rater's brigade. In addition, Radnick argued that the period should have been tolled during the time his application for promotion was pending before the ABCMR. A.R. 024.

As to the merits of his appeal, Radnick contended that "the attitude of the command" was to "equate[] a failure to reach all minimums of the APFT, regardless of score as a '5.'" A.R. 025. Radnick claimed that the imposition of a "5" rating without the required explanatory comments and in light of his previous "1" ratings for the same category created a substantive inaccuracy

---

[6] AR 623-105 § 9-3 states that OER appeals are governed by a five-year limitations period:

> Because evaluation reports are used for personnel management decisions, it is important to the Army and the individual officer that an erroneous report be corrected as soon as possible. As time passes, people forget and documents and key personnel are less available; consequently, preparation of a successful appeal becomes more difficult. Normally, appeals will be considered regardless of the period of the report, and a decision will be made in view of the regulation in effect at the time the report was rendered. However, the likelihood of successfully appealing a report diminishes, as a rule, with the passage of time. Substantive appeals on reports rendered 5 or more years prior are particularly difficult to substantiate with credible evidence. Prompt submission is, therefore, recommended.

that should be remedied.  A.R. 024-25.  He also emphasized that the rating officer violated the requirements of AR 623-105 § 4-13(b)(7)(a) by not providing comments regarding the "5" rating.  He then attached all of his OERs and letters from his two most recent commanding officers.[7]

On October 20, 2000, the OSRB returned Radnick's appeal "without action," finding it was not "acceptable for adjudication due to the delay in submission and lack of clear and compelling evidence."  A.R. 019.  The OSRB was particularly troubled by Radnick's failure to appeal the "5" ratings timely.

> [The appeals process] is designed to encourage timely efforts to seek relief when a report is believed to be inaccurate or unjust.  The individual responsible for making that determination is the rated officer.  He does not have to know or even believe the report might be career damaging, but only that it is inaccurate or unjust.  If he believes it is, initiating a timely appeal is part of his responsibility for career management and development.  The appeals process is not intended to be a means for attempting to preempt or reverse unfavorable results of personnel selection systems, especially when the rated officer allowed the now-contested report to be considered an accurate evaluation of his performance and potential for more than 5 years.

A.R. 020.  In addition to finding Radnick's appeal untimely, the OSRB also found that "[n]one of the information provided [by Radnick] offers any clear compelling evidence that refutes the evaluation made by the rating officials about [Radnick's] APFT

---

[7] Both letters indicated an overall attitude of disbelief as to how Radnick could have received physical fitness ratings of "5."  A.R. 060, 061.

8

status." A.R. 020. Thus, "the official record did not substantiate his claims of rater error." Id.

Three years later, in November 2003, Radnick took further steps to correct what he considered to be substantive inaccuracies in his personnel record. This time he requested that the ABCMR correct his record by deleting the "5" ratings from the 1994 OER and the 1995 OER. A.R. 009. As the Secretary has emphasized to this Court, Radnick did not ask the ABCMR to delete the "FAIL" notation. See Mem. in Support of Def.'s Mot. at 11.

The ABCMR denied Radnick's request on July 21, 2004. A.R. 069-76. Although recognizing "that the rater should have commented on the applicant's APFT failures and addressed reasons for the failures and noted any progress toward the applicant meeting physical fitness standards," the ABCMR held that the rating officer's "failure to do so does not invalidate the rating of '5.'" A.R. 075. The ABCMR found that the practice of assigning a "5" rating to everyone who failed the APFT did not demonstrate inequitable conduct by Radnick's rating officer because the practice was applied uniformly. The ABCMR also recognized that the OSRB's conclusion had been issued more than three years before Radnick filed his request with the ABCMR and that Radnick had not presented any new evidence to the ABCMR. A.R. 075-76.

Having exhausted his administrative remedies, Radnick brought the present action.

### III. DISCUSSION

Under the APA, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702 (2006). "The reviewing court shall . . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. at § 706.

The corresponding scope of judicial review is narrow and a reviewing court must not "substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); see also Maryland Dep't of Human Resources v. U.S. Dep't of Agriculture, 976 F.2d 1462, 1475 (4th Cir. 1992). Instead, the court must view the explanation given by the agency and determine whether a "'rational connection between the facts found and the choice made'" exists and "whether there has been a clear error of judgment." Motor Vehicle Mfrs. Ass'n of U.S., Inc., 463 U.S. at 43 (quoting Burlington Truck Lines v. United States, 371 U.S. 146, 168 (1962)). The plaintiff, therefore, has the burden of showing by clear and convincing evidence that the challenged

decision was contrary to "mandatory published procedure of a substantial nature by which [the complainant] has been seriously prejudiced." See Walker v. Shannon, 848 F.Supp. 250, 24 (D.D.C. 1994) (quoting Clayton v. United States, 225 Ct. Cl. 593 (1980)).

The parties do not dispute that Radnick failed the APRT on both occasions that he received a "5" rating in Part IV(a)(3) of the 1994 and 1995 OERs. Radnick argues that his failure to timely challenge the "FAIL" notations and the "5" ratings in his appeal to the ABCMR does not discredit his argument that failure to include the narrative "information mandated by the regulation resulted in inaccurate, incomplete, and illegally prepared records in his promotion file." Pl.'s Reply at 2.

The Secretary acknowledges that mistakes were made with regard to Radnick's OERs, conceding that the mandatory comments were not present. See Defs.' Opp'n and Reply at 5. The Secretary argues, however, that any error made by Radnick's rating officers was harmless because even if Radnick's suggested solution of removing the "5" ratings from the 1994 and 1995 OERs was granted, that change would not remove the "FAIL" notation in each OER.[8] See id. ("[R]emoving the '5' from the OERs and

---

[8] The Secretary also argues that Radnick's OERs demonstrate a relatively mediocre officer and concludes that "even if the ABCMR had granted the plaintiff's requested relief [of removing the "5" rating], he still would have had extremely low potential ratings on six out of nine OERS and APFT 'Fail' entries on two OERs" and thus would most likely not have been promoted. See Defs.' Opp'n and Reply at 6.

11

substituting a blank, as plaintiff requested, would not have substantially changed the overall quality of plaintiff's OERs."). Although the Court recognizes that the rating official violated Army regulations, the deference afforded to decisions of the Secretary, the undisputed fact that Radnick failed the APRT on both occasions, and the lack of clear and convincing evidence due to the time period allowed to lapse by Radnick before he appealed the OERs, establish that the decision of the ABCMR was neither arbitrary nor capricious.

The ABCMR's review of the record included an examination of all of the aforementioned OERs, constituting a majority of Radnick's career with the Michigan Army National Guard.  It then made detailed findings regarding both the 1994 and 1995 OERs. Concerning the 1994 OER, the ABCMR recognized that although no comments were present in Part IV(b), the rating officer did state in Part V(c) that "[o]f continuing concern, however, is the fact that MAJ Radnick has not passed the APFT in a number of years. His status as a mobilization asset is thus much in question." A.R. 072 (citing A.R. 044).  With regard to his potential, the rating officer noted that if Radnick passed the APRT, he "should be considered for the position of Command Judge Advocate."  Id. As to the 1995 OER, the ABCMR again recognized that although the required comments were not present in Part IV(b), the rating officer noted elsewhere in the OER that "[s]ubject to his passing

the APFT, MAJ Radnick should be considered for the position of Command Judge Advocate or for assignment to State Area Command." Id.

The ABCMR also observed that because OERs are "presumed to be administratively correct" the burden of proof in appealing an OER rests with the applicant, who must produce "evidence that clearly and convincingly nullifi[es] the presumption of regularity." A.R. 072-73. Radnick, however, did not provide the conclusive evidence necessary to overcome that burden. Although Radnick stated that "to the best of his recollection" and "as he recalled," he either passed each physical fitness event or satisfied 90 percent of the minimum requirements of each test, his recollection, without more, did not constitute compelling evidence to overturn the rating officer's decisions. A.R. 073. The ABCMR also agreed with the OSRB's finding that the cumulative effect of "the issues raised, evidence offered, length of delay, and reasons for delay" did not constitute grounds for waiving the 5-year time period in which to appeal an OER. Id. This initial delay, along with the cumulative delay between the OSRB's decision and the appeal to the ABCMR, led the Board to deny Radnick's appeal. A.R. 076.

There is no doubt that a "rational connection between the facts found and the choice made" by the ABCMR exists in this case. See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm

Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  Moreover, the findings of both the OSRB and the ABCMR, that it was unreasonable for Radnick not to pursue timely appeals of the contested "5" ratings and to permit them to remain in his personnel record for over five years before arguing for their removal, were reasonable and neither arbitrary nor capricious.  Radnick admits that "the most critical item in an officer's selection folder is his OER, and if it is low or compares unfavorably with those of his peers, it is fatal to his chances of selection." (quoting Sanders v. United States, 594 F.2d 804, 818 (Cl. Ct. 1979) superseded by statute as stated in Richey v. U.S., 322 F.3d 1317 (Fed. Cir. 2003)).

Furthermore, as a JAG Officer, Radnick is charged with knowing the legal consequences of failing to act timely on a perceived error in his record.  If the errors were as egregious as he now argues, he should have timely acted to correct them. When his request for a commander's inquiry into the 1994 OER was ignored, he failed to follow up with his senior rater.  When he again received a "5" rating in his 1995 OER he did nothing.  It was not until a year after his promotion request was denied, and over six years after the referral of the 1994 OER, that he sought review by the OSRB.  Lastly, Radnick has failed to produce any evidence of any action by the Secretary that prevented him from pursuing timely appeals of the two OERs or any basis for

14

equitable tolling of the five year period in which to appeal.  He has also failed to present any evidence, other than his personal belief, that he passed, or came close to passing, the APRT events.

## IV. CONCLUSION

For the above stated reasons it is clear that the ABCMR's decision not to remove the "5" ratings did not amount to an arbitrary or capricious decision that entitles the plaintiff to relief from this Court.  Accordingly, the defendants' Motion for Summary Judgment will be granted and plaintiff's Cross-Motion for Summary Judgment will be denied.

An appropriate Order will issue with this opinion.

Entered this 11th day of October, 2006.

/s/
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia